### UNITED STATES v. CHARLES L. HEINLE SPECIALTY CO.

(District Court, E. D. Pennsylvania. January 4, 1910.)

No. 33.

COMMERCE (§ 60*)—INTERSTATE COMMERCE—PURE FOOD ACT—VALIDITY—CONFORMITY—GUARANTY.

Pure Food Act June 30, 1906, c. 3915, 34 Stat. 768 (U. S. Comp. St. Supp. 1909, p. 1187), prohibits the adulteration or misbranding of foods introduced in interstate commerce, and makes any person violating the act guilty of a misdemeanor and subject to certain fines and penalties. Section 9 provides that no dealer shall be prosecuted under the act if he can establish a guaranty, signed by the wholesaler, jobber, manufacturer, or other party residing in the United States, from whom he purchased the goods, that the same are not adulterated or misbranded within the meaning of the act. *Held*, that such section was not invalid as applied to a wholesaler who sold adulterated or misbranded goods within the state to a dealer under a guaranty of conformity to the pure food and drug act, with knowledge that such guaranty was exacted to further the sale of the goods in interstate commerce; they having been actually shipped out of the state by the dealer, relying on the guaranty.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 60.*]

The Charles L. Heinle Specialty Company was indicted for violating the pure food act (Act June 30, 1906, c. 3915, 34 Stat. 768 [U. S. Comp. St. Supp. 1909, p. 1187]) in selling adulterated and misbranded merchandise, and demurs to the indictment. Overruled.

Jasper Yeates Brinton and J. Whitaker Thompson, for the United States.

William R. Newgeon, for defendant.

HOLLAND, District Judge. This is a demurrer filed by the defendant to an information lodged against it by the district attorney for the Eastern district of Pennsylvania for having sold an adulterated and misbranded article of food manufactured by it and in violation of the ninth section of the pure food act of June 30, 1906 (34 Stat. 771, c. 3915 [U. S. Comp. St. Supp. 1909, p. 1193]), executed and delivered a false guaranty to the effect that the merchandise sold was not adulterated or misbranded within the meaning of the act. The dealer to whom this adulterated and misbranded food was sold by the defendant, and to whom the false guaranty was given, sold the same in interstate commerce, and upon the discovery by the govern-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ment officials that the article was misbranded it is alleged the dealer who sold the same in interstate commerce established the guaranty of the defendant; whereupon this information was filed.

The defendant's demurrer alleges that the information sets forth no charge or offense for which the defendant can be convicted and punished under the act of Congress approved June 30, 1906, because the ninth section, upon which the information is based, is unconstitutional. Under the second section of this act the introduction into interstate commerce of adulterated or misbranded foods is prohibited, and any person violating this provision is guilty of a misdemeanor, subject to certain fines and penalties. The ninth section is as follows:

"That no dealer shall be prosecuted under the provisions of this act when he can establish a guaranty signed by the wholesaler, jobber, manufacturer or other party residing in the United States from whom he purchased such articles, to the effect that the same is not adulterated or misbranded within the meaning of this act, designating it. Said guaranty to afford protection shall contain the name and address of the party or parties making the sale of such articles to such dealer, and in such case said party or parties shall be amenable to the prosecutions, fines and other penalties which would attach in due course, to the dealer under the provisions of this act."

The defendant in this case is charged in the information with having executed and delivered to the dealer who sold the adulterated and misbranded food in interstate commerce the following guaranty, which is alleged to be false:

"We, the vendors of the articles mentioned in the foregoing invoice, hereby guarantee and warrant the same to be in full conformity with the federal act of June 30, 1906, known as the 'Food and Drug Act,' * * * in that the said articles are not adulterated or misbranded within the meaning of * * * the aforesaid act of Congress."

It is not contended by the defendant that Congress has no constitutional right to prohibit the introduction of adulterated and misbranded foods in interstate commerce; but the claim is that, so far as the defendant's connection with the adulterated and misbranded goods was concerned, the entire transaction of manufacturing, selling, and delivering by it was consummated within the state, as was the issuance of the false certificate, and, as the defendant's connection with the article was entirely within the state, the fact that the certificate indicates that the adulterated and misbranded commodity was intended for interstate commerce can make no difference, because the federal courts could have no jurisdiction, whatever the intention of the manufacturer might be, until such goods had been shipped or entered with a common carrier for transportation to another state, or had been started upon such transportation in a continuous route or journey—and cites Kidd v. Pearson, 128 U. S. 1, 9 Sup. Ct. 6, 32 L. Ed. 346.

There is nothing in the act to indicate that there is an effort on the part of Congress to regulate the manufacturing, selling, or delivering of any articles of food within the states. The act is intended to prevent adulterated and misbranded foods from being sold in interstate commerce—nothing more; and in order that this may be accomplished it prohibits the party who makes or manufactures the food, and who knows what it contains, from falsely assuring an innocent

purchaser that its quality and dress lawfully entitles him to sell the commodity in interstate commerce. Such a certificate, made by a defendant expressly under the provisions of the act, if false, could have been made with no purpose other than to defeat the object of the act. This prohibition is obviously essential to the enforcement of one of the important powers with which Congress is intrusted, to wit, the regulation of interstate commerce. To punish the dealer who sells the article in another state will not in all cases reach the evil sought to be remedied. He may be entirely innocent of any intention of selling an adulterated or misbranded food, because he may be unable to tell the difference between a pure article and one adulterated, and dealers cannot be expected to employ expert chemists to examine the great variety of commodities which enter into commerce and are dealt in by them; but the evil can soon be cured if the innocent dealer may shift the responsibility for the purity of the commodity to the manufacturer, by requiring him to certify to the effect that the article is not adulterated or misbranded, when the manufacturer knows he will be subjected to punishment in case he gives a false certificate prohibited by the act.

In the case of United States v. Fox, 95 U. S. 670, 24 L. Ed. 538, in passing upon the provision in the bankrupt law which made it a misdemeanor, punishable by imprisonment, for obtaining goods under false pretense with intent to defraud, within three months of the commencement of bankruptcy proceedings, the court held that, as this would be no offense under the act of Congress at the time of the commission of the false pretense, any subsequent independent act by the party himself or a third party in instituting bankruptcy proceedings could not make it a crime punishable in the federal courts. In the discussion of the question, it was said by Justice Field that:

"The criminal intent essential to the commission of a public offense must exist when the act complained of is done. It cannot be imputed to a party from a subsequent independent transaction. There are cases, it is true, where a series of acts are necessary to constitute an offense, one act auxiliary to another in carrying out the criminal design."

In this case, the criminal intent essential to the commission of the offense existed at the time defendant gave the certificate, specifying that it was under the pure food act of Congress of June 30, 1906. With what purpose and intent was the certificate given, other than for the purpose of evading the provisions of this act of Congress? It is averred defendant made and knew the goods were both adulterated and misbranded, and with this knowledge gave a certificate that they were not adulterated or misbranded, in order that an innocent purchaser might sell them in interstate commerce, and, in this case, the purpose of the certificate was accomplished. The dealer did just what the defendant intended he should do; that is, the dealer, relying on the certificate, sold the articles in another state. "Any act committed with a view of evading the legislation of Congress, passed in the execution of any of its powers, or of fraudulently securing the benefit of such legislation, may properly be made an offense against the United States." U. S. v. Fox, supra.

Demurrer overruled.