# UNITED STATES *v.* WALSH, TRADING AS KELP LABORATORIES.

No. 718.   Argued April 29, 1947.—Decided May 19, 1947.

*Robert S. Erdahl* argued the cause for the United States. With him on the brief were *Acting Solicitor General Washington, Sheldon E. Bernstein* and *Vincent A. Kleinfeld.*

*Eugene W. Miller* argued the cause and filed a brief for appellee.

MR. JUSTICE MURPHY delivered the opinion of the Court.

This appeal brings before us § 301 (h) of the Federal Food, Drug, and Cosmetic Act of 1938, 52 Stat. 1040, 1042,

21 U. S. C. § 331 (h), which prohibits the giving of a false guaranty that any food, drug, device or cosmetic is not adulterated or misbranded within the meaning of the Act.

Appellee does business in San Diego, California, under the name of Kelp Laboratories. An information has been filed, charging appellee with having given a false guaranty in violation of § 301 (h). The following facts have been alleged: In February, 1943, appellee gave a continuing guaranty to Richard Harrison Products, of Hollywood, California, stating that no products thereafter shipped to the latter would be adulterated or misbranded within the meaning of the Act. On February 24, 1945, while the guaranty was in full force and effect, appellee consigned to Richard Harrison Products, at Hollywood, a shipment of vitamin products which were allegedly adulterated and misbranded—thereby making the guaranty false in respect of that shipment. Prior and subsequent to the date of the shipment, Richard Harrison Products was engaged in the business of introducing and delivering for introduction into interstate commerce quantities of the vitamin product supplied by appellee.

Appellee moved to dismiss the information on the ground that it did not state an offense. The argument was that § 301 (h) applies only to a guaranty that is false relative to an interstate shipment, whereas the alleged shipment here was to a consignee within California, the state of origin, and there was no allegation that the consignee purchased the order for someone outside California or that it intended to sell the products in its interstate rather than its intrastate business. The District Court gave an oral opinion sustaining appellee's contention and granting the motion to dismiss. The case is here on direct appeal by the United States.

The Federal Food, Drug, and Cosmetic Act rests upon the constitutional power resident in Congress to regulate interstate commerce. To the end that the public health and safety might be advanced, it seeks to keep interstate channels free from deleterious, adulterated and misbranded articles of the specified types. *United States* v. *Dotterweich,* 320 U. S. 277, 280. It is in that interstate setting that the various sections of the Act must be viewed.

But § 301 (h), with which we are concerned, does not speak specifically in interstate terms. It prohibits the "giving of a guaranty or undertaking referred to in section 303 (c) (2), which guaranty or undertaking is false," the only exception being as to a false guaranty given by a person who, in turn, relied upon a similar guaranty given by the person from whom he received in good faith the adulterated or misbranded article.[1] Nothing on the face of the section limits its application to guaranties relating to articles introduced or delivered for introduction into interstate commerce. From all that appears, its proscription plainly extends to the giving of any false statutory guaranty, without regard to the interstate or intrastate character of the shipment in question, to those who are engaged in the business of making interstate shipments.

Nor do we find any interstate limitation of the type which appellee proposes in the reference made in § 301 (h)

---

[1] Section 301 (h) prohibits "The giving of a guaranty or undertaking referred to in section 303 (c) (2), which guaranty or undertaking is false, except by a person who relied upon a guaranty or undertaking to the same effect signed by, and containing the name and address of, the person residing in the United States from whom he received in good faith the food, drug, device, or cosmetic; or the giving of a guaranty or undertaking referred to in section 303 (c) (3), which guaranty or undertaking is false."

to § 303 (c) (2).[2]   That reference is made simply to define the type of guaranty or undertaking the falsification of which is prohibited by § 301 (h).   Instead of spelling out the matter, § 301 (h) adopts the reference in § 303 (c) (2) to "a guaranty or undertaking signed by, and containing the name and address of, the person residing in the United States from whom he received in good faith the article, to the effect . . . that such article is not adulterated or misbranded, within the meaning of this Act, designating this Act . . . ."   The fact that § 303 (c) (2) relieves a holder of such a guaranty from the criminal penalties provided by § 303 (a) for violating § 301 (a) does not carry over the interstate limitation of § 301 (a) to § 301 (h).   Section 301 (a) prohibits the introduction or delivery for introduction into interstate commerce of illicit articles,[3] and § 303 (c) (2) relieves one from the liabilities of such introduction if one has a guaranty or undertaking as therein described.   Section 301 (h) has adopted that description for the entirely different purpose of informing persons what kind of a guaranty or undertaking may not be given falsely.   In other words,

---

[2] Section 303 (c) (2) provides that no person shall be subject to the penalties of § 303 (a) "for having violated section 301 (a) or (d), if he establishes a guaranty or undertaking signed by, and containing the name and address of, the person residing in the United States from whom he received in good faith the article, to the effect, in case of an alleged violation of section 301 (a), that such article is not adulterated or misbranded, within the meaning of this Act, designating this Act, or to the effect, in case of an alleged violation of section 301 (d), that such article is not an article which may not, under the provisions of section 404 or 505, be introduced into interstate commerce . . . "

[3] Section 301 (a) prohibits "The introduction or delivery for introduction into interstate commerce of any food, drug, device, or cosmetic that is adulterated or misbranded."

§ 301 (a) is directed to illegal interstate shipments, while § 301 (h) is directed to the giving of false guaranties. Guaranties as described in § 303 (c) (2) may be used by interstate dealers in connection with either interstate or intrastate shipments and those guaranties that are false are outlawed by § 301 (h).

It is true, of course, that the guaranty referred to in § 303 (c) (2) is one given for the purpose of protecting the dealer "in case of an alleged violation of section 301 (a)," thereby relieving him of liability if he reships adulterated or misbranded goods in interstate commerce. But where such a guaranty, as in this case, is given to a dealer regularly engaged in making interstate shipments and who may therefore have need of the guaranty, § 301 (h) imposes liability on the guarantor if that guaranty turns out to be false. And that liability attaches even where the particular shipment which renders the guaranty false is not alleged to have been an interstate one.

It is significant that § 301 (h) had no counterpart in the predecessor statute, the Food and Drugs Act of 1906, 34 Stat. 768. Under § 9 of that Act, a dealer could not be prosecuted for shipping adulterated or misbranded articles in interstate commerce if he had a guaranty of a type similar to that referred to in the present statute. If there were such a guaranty, the guarantor was subject to the penalties which would otherwise attach to the dealer. The result was that the guarantor was not liable on account of a false guaranty unless the dealer had shipped the prohibited article in interstate commerce. *Steinhardt Bros. & Co.* v. *United States,* 191 F. 798, 800; *United States* v. *Charles L. Heinle Specialty Co.,* 175 F. 299, 300–301. There was no liability for issuing a false guaranty as such to one engaged in an interstate business. But in the 1938 Act, Congress added a new liability in the form

of § 301 (h), making the guarantor liable for giving a false guaranty of the type referred to in § 303 (c) (2). We find it impossible to say that the framers of the 1938 Act added § 301 (h) for the useless purpose of achieving the same result as had been reached under the 1906 Act without such a provision.

We thus conclude that § 301 (h) definitely proscribes the giving of a false guaranty to one engaged wholly or partly in an interstate business irrespective of whether that guaranty leads in any particular instance to an illegal shipment in interstate commerce. Such a construction is entirely consistent with the interstate setting of the Act. A manufacturer or processor ordinarily has no way of knowing whether a dealer, whose business includes making interstate sales, will redistribute a particular shipment in interstate or intrastate commerce. But if he guarantees that his product is not adulterated or misbranded within the meaning of the Act, he clearly intends to assure the dealer that the latter may redistribute the product in interstate commerce without incurring any of the liabilities of the Act. And the dealer is thereby more likely to engage in interstate distribution without making an independent check of the product. The possibility that a false guaranty may give rise to an illegal interstate shipment by such a dealer is strong enough to make reasonable the prohibition of all false guaranties to him, even though some of them may actually result only in intrastate distribution. By this means, some of the evils which Congress sought to eliminate are cut down at their source and the effectiveness of the Act's enforcement is greatly enhanced.

So construed, § 301 (h) raises no constitutional difficulties. The commerce clause of the Constitution is not to be interpreted so as to deny to Congress the power to make effective its regulation of interstate commerce.

Where that effectiveness depends upon a regulation or prohibition attaching regardless of whether the particular transaction in issue is interstate or intrastate in character, a transaction that concerns a business generally engaged in interstate commerce, Congress may act. Such is this case.

The judgment of the District Court is accordingly

*Reversed.*

Mr. Justice Jackson, dissenting.

Stretch the Food and Drugs Act as we will, I cannot make it cover this charge as a crime. The statutory scheme is to make a crime of "The introduction or delivery for introduction into interstate commerce" of adulterated or misbranded goods. 52 Stat. 1042, 21 U. S. C. § 331 (a) and (d).

But since many shippers buy goods of others and do not know their precise ingredients, Congress allowed an escape for the violator, provided he acted in good faith and could trace the responsibility to another. This he must do by producing a signed guaranty or undertaking, and the statute requires that it shall be conditioned "to the effect, *in case of an alleged violation of* section 331 (a), that such article is not adulterated or misbranded . . . or to the effect, *in case of an alleged violation of* section 331 (d), that such article is not an article" forbidden shipment by stated paragraphs of the Act. (Emphasis added.) 52 Stat. 1043, 21 U. S. C. § 333 (c).

It will be noticed that Congress not only provided but repeated that the statutory bond required is "in case of an alleged violation" by introducing or delivering for introduction of goods in interstate commerce. No such violation has been alleged here; these goods were never introduced or delivered for introduction into interstate

commerce. But the Court seems to think it is enough that there are some grounds for expecting that this crime possibly, or probably, or perhaps pretty certainly, would eventually be committed.

Of course, if the assured had committed this offense and had fallen back on the guarantor, the statute which reached the assured would not be sufficient. To punish the responsible person, it was made a crime to give a false guaranty "referred to in" the statute. 52 Stat. 1042, 21 U.S.C. § 331 (h).

The Government now seeks to exact criminal responsibility on a guarantee, expressly conditioned only "in case of violation," in a case of no violation. Until a violation is alleged, the guaranty plays no statutory role at all. It might afford a cause of action if false, but that is quite different from making it a crime. For it is no guaranty at all for criminal prosecution purposes if violation of neither § 331 (a) nor § 331 (d) is alleged. The statute requires such violation to be alleged only, not proved, in order to put the guarantor rather than the assured to the proof. This is the only instance I recall where the guarantor is liable when there is no breach of the condition of the bond. The whole plan was to have a substituted liability in case the violator of the Act became such in good faith. This decision makes a new, independent and original liability where there has been no alleged violation by moving the goods in interstate commerce.

I do not think we should take such liberties in expanding criminal statutes in which the sovereign once was considered under a duty to be explicit and the subject entitled to the doubt.