UNITED STATES of America,
Plaintiff–Appellee,

v.

EIGHT UNLABELED CASES, MORE OR LESS, OF AN ARTICLE OF COSMETIC, each case containing 24/80–Tablet bottles, labeled in part:

(bottled)

"French Bronze Tablets" * * * 80 tablets * * * Each Tablet contains 30 mg. of Canthaxanthin and 3 mg. of Beta–Caro-

tene * * * Distributed by French Bronze Tablets 210 Fifth Avenue, New York, New York * * *, Defendants.

Appeal of FBNH ENTERPRIZES, INC., Claimant–Appellant.

No. 1368, Docket 89–6071.

United States Court of Appeals, Second Circuit.

Argued Sept. 14, 1989.

Decided Oct. 6, 1989.

Charles B. Chernofsky, New York City, for defendants and claimant-appellant.

Rosanne M. Harvey, Asst. U.S. Atty., Brooklyn, NY (Andrew J. Maloney, U.S. Atty. for the Eastern District of New York, Robert L. Begleiter, Asst. U.S. Atty., of counsel), for plaintiff-appellee.

Before KAUFMAN, CARDAMONE and FRIEDMAN *, Circuit Judges.

---

* Honorable Daniel M. Friedman, United States Circuit Judge, Federal Circuit, sitting by designation.

IRVING R. KAUFMAN, Circuit Judge:

Although the pursuit of an even suntan has long been fashionable, only lately has it been attained through pharmaceutical products. Manufacturers have begun marketing cosmetic products which impart color to the skin without the traditional exposure to the natural and perhaps dangerous rays of the sun. French Bronze Tablets, one such product, is the subject of this appeal.

The facts in this case are not in dispute. The United States, on behalf of the Food and Drug Administration ("F.D.A."), commenced a lawsuit on June 16, 1988, by filing a complaint *in rem* seeking the forfeiture and condemnation of a quantity of a product labelled "FRENCH BRONZE TABLETS," in the possession of the Claimant–Appellant, FBNH Enterprizes, Inc. ("FBNH"). The complaint alleged that the tablets are "adulterated" cosmetics within the meaning of 21 U.S.C. § 361(e) because they contain canthaxanthin and beta-carotene, allegedly unsafe color additives as defined by 21 U.S.C. § 376(a).

On September 30, 1988, the government filed an amended complaint removing the reference to beta-carotene[1] and challenging only the use of canthaxanthin in the defendant product. While the synthetic color additive canthaxanthin has been approved for use as a coloring agent in food and drugs, the F.D.A. has not issued regulations authorizing its use in cosmetic products. Each FRENCH BRONZE TABLET, Claimant concedes, is a cosmetic containing 30 milligrams of canthaxanthin.

In its opposition to the government's motion for summary judgment, FBNH nevertheless asserted that the existence of regulations for the use of a color additive as either a food or a drug is sufficient to permit its use in a cosmetic. Rejecting Claimant's interpretation of the relevant provisions of the Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.*, Judge Glasser of the Eastern District of New York granted the government's motion for summary judgment, denied Claimant's cross-motion for the same relief and ordered forfeiture

and destruction of the tablets. Claimant appeals.

On appeal, we must decide whether Judge Glasser correctly held that a cosmetic tanning product which contains a color additive approved for use in food and drugs but unapproved for use in cosmetics must be banned from the marketplace. As a matter of statutory interpretation and simple logic, we agree with the lower court and affirm.

We now commence our tortuous journey through the Food, Drug, and Cosmetic Act (the "Act"). Congress has delegated to the Secretary of Health and Human Services the authority to regulate food, drugs and cosmetics for the purpose of safeguarding the public health from deleterious, adulterated and misbranded articles. *See United States v. Walsh*, 331 U.S. 432, 434, 67 S.Ct. 1283, 1284, 91 L.Ed. 1585 (1947); *see also United States v. Diapulse Corp.*, 457 F.2d 25, 28 (2d Cir.1972) (purpose of Food, Drug and Cosmetic Act is to protect public from products not proven safe and effective). The Secretary of Health and Human Services has redelegated his authority under the Act to the Commissioner of the Food and Drug Administration. *See* 21 C.F.R. § 5.10. Among other powers, the F.D.A. has been given the authority to regulate the use of color additives in food, drugs, and cosmetics. *See* 21 U.S.C. § 376(b).

In particular, § 376(b) instructs:

(1) The Secretary shall, by regulation, provide for *separately* listing color additives for use in or on food, color additives for use in or on drugs, or devices, and color additives for use in or on cosmetics, if and to the extent that such additives are suitable and safe for any such use when employed in accordance with such regulations.

21 U.S.C. § 376(b) (emphasis added).

Thus, the F.D.A. is required to issue separate regulations approving color additives specifically for use in food, drugs and cosmetics to the extent an additive is suitable and safe for its intended use. As a

---

1. Beta-carotene has been approved for use in cosmetics. *See* 21 C.F.R. § 73.2095.

means of protecting the public health, 21 U.S.C. § 376(a) creates a presumption that a color additive is "unsafe" if the F.D.A. has not issued a regulation approving its use in a food, drug or cosmetic. Any product that contains the presumptively unsafe color additive is deemed "adulterated" under 21 U.S.C. § 361(e) and is subject to seizure and condemnation pursuant to 21 U.S.C. § 334.

Specifically, 21 U.S.C. § 376(a) provides: A color additive shall, with respect to any particular use (for which it is being used or intended to be used or is represented as suitable) in or on food or drugs or devices or cosmetics, be deemed unsafe for the purposes of the application of section . . . 361(e) of this title, as the case may be, unless—

(1)(A) there is in effect, and such additive and such use are in conformity with, a regulation issued under subsection (b) of this section[2]. . . .

Under 21 U.S.C. § 361(e), a cosmetic is deemed adulterated "[i]f it is not a hair dye and it is, or it bears or contains, a color additive which is unsafe within the meaning of section 376(a) of this title." Title 21 U.S.C. § 334, states that any food, drug or cosmetic product which is adulterated while in interstate commerce or held for sale after interstate shipment may be seized, condemned, and destroyed.

FBNH does not deny that the defendant French Bronze Tablets are "cosmetics other than hair dye" within the meaning of 21 U.S.C. § 361(e). Further, it concedes that each tablet contains 30 milligrams of canthaxanthin, a color additive that has not been approved for use in a cosmetic under 21 U.S.C. § 376(b). It argues, however, that the existence of regulations permitting

the use of canthaxanthin in food or drugs makes it inappropriate to ban the cosmetic product French Bronze Tablets on the ground that it contains the same color additive. Claimant's principal thrust[3] is that the last paragraph of 21 U.S.C. § 376(a) compels us to accept its interpretation. This paragraph provides:

While there are in effect regulations under subsections (b)[4] and (c)[5] of this section relating to a color additive or an exemption pursuant to subsection (f)[6] of this section with respect to such additive, an article shall not, by reason of bearing or containing such additive in all respects in accordance with such regulations or such exemption, be considered adulterated within the meaning of clause (1) of section 342(a) of this title if such article is a food, or within the meaning of section 361(a) of this title if such article is a cosmetic other than a hair dye (as defined in the last sentence of section 361(a) of this title). . . .

Together, sections 342(a) and 361(a) of Title 21 provide that a food or cosmetic shall be deemed adulterated if it bears or contains any poisonous or deleterious substance which may render it injurious.

Claimant urges us to decide that the language we have quoted from 21 U.S.C. § 376(a) operates as a "savings clause" which "grandfathers in" or otherwise permits the use of a color additive in a cosmetic if the additive has been approved for use in either a food or drug. FBNH urges that the term "article" be interpreted broadly to embrace all three categories of products under the Act: food, drugs, and cosmetics. Thus, Claimant insists that the existence of regulations permitting the use of canthaxanthin in food and drugs renders its use in a cosmetic product "safe" so that the de-

---

**2.** As indicated above, 21 U.S.C. § 376(b) requires the Secretary, or his delegate, to issue separate regulations for food, drugs and cosmetics.

**3.** Claimant states in its brief: "Absent the last (unnumbered paragraph) of 21 U.S.C. 376(a) the plaintiff would be justified in its seizure and condemnation of the product."

**4.** Pursuant to 21 U.S.C. § 376(b), the F.D.A. is authorized to issue separate regulations approv-

ing the use of a color additive in food, drugs, and cosmetics.

**5.** Under 21 U.S.C. § 376(c), the F.D.A. is authorized to certify for safe use batches of color additives listed pursuant to subsection (b).

**6.** 21 U.S.C. § 376(f) exempts a color additive from regulation where the F.D.A. has chosen to permit the additive to be used for investigational purposes by qualified experts.

fendant FRENCH BRONZE TABLETS are exempt from a finding of adulteration under 21 U.S.C. § 361(e). Only such an interpretation, FBNH asserts, makes logical sense of the statutory language.[7] We disagree. Claimant's construction of the relevant provisions of the Act is supported neither by the plain language of the statute nor by dint of logic.

FBNH's statutory interpretation is strained and contrary to the plain meaning of 21 U.S.C. § 376(a) on its face and in the context of the cross-referenced provisions. Although 21 U.S.C. § 376(a) may not be a model of legislative clarity, there is no sound reason to adopt a novel construction of its language absent a clear legislative history contradicting the plain meaning of its words. *See, e.g., United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981); *United States v. Holroyd,* 732 F.2d 1122, 1125 (2d Cir. 1984).

Both the language and the legislative history of 21 U.S.C. § 376 indicate that its last paragraph was intended to provide that a food or cosmetic product which uses a color additive in accordance with an existing regulation shall not be deemed adulterated on the ground that the color additive may be found "poisonous or deleterious" within the meaning of the food and cosmetic provisions 21 U.S.C. §§ 342(a) and 361(a), respectively. In sum, 21 U.S.C. § 376(a) provides that the F.D.A. may not ban through forfeiture and condemnation proceedings cosmetics that contain color additives which have been approved for use in cosmetics, despite the fact that those color additives may be harmful when used in concentrations or in situations differing from those prescribed as safe by regulation. *See* H.R.Rep. No. 1761, 86th Cong.,

2d Sess., *reprinted in* 1960 U.S.Code Cong. & Admin.News 2887, 2906, 2923.

Thus, the statute in effect creates a narrow safe harbor for food or cosmetics that contain a color additive approved for use in the particular type of product. As long as a color additive present in a food or cosmetic is used in accordance with a prescribed regulation, the product may not be condemned as adulterated because the additive proves harmful in other circumstances. The final provision of 21 U.S.C. § 376(a) therefore acts as a limitation on the scope and application of §§ 361(a) and 342(a) of Title 21. It does not, however, assist in overcoming the presumption that an unapproved additive in a cosmetic is unsafe within the meaning of 21 U.S.C. § 361(e), the section relevant to this appeal.[8]

Even if the provision of 21 U.S.C. § 376(a) we have discussed above were to apply to 21 U.S.C. § 361(e), Claimant would not be deserving of the relief it requests against forfeiture and condemnation of defendant tablets. Claimant mistakenly interprets the last sentence in 21 U.S.C. § 376(a) to render the standards governing the safety of color additives in cosmetics interchangeable with those governing the safety of substances in food and drugs. Congress clearly intended that the standards governing each product group remain separate. *See* 21 U.S.C. § 376(b), quoted *supra.*

Our conclusion would not change by construing broadly the term "article" as used in the last sentence of 21 U.S.C. § 376(a) as Claimant suggests. The issue in dispute is not which product groups fall within the ambit of protection afforded by the last sentence of 21 U.S.C. § 376(a); rather, we must assess which regulations apply to

---

7. We note that FBNH disclaimed at oral argument that it was contending that the last sentence of 21 U.S.C. § 376(a) extended to 21 U.S.C. § 361(e) and was not limited to the poisonous and deleterious provision in 21 U.S.C. § 361(a). Rather, it attributed the reference to 21 U.S.C. § 361(e) in its brief to a typographical error.

8. The government has not alleged that the defendant tablets are adulterated because they

contain a poisonous or deleterious substance that may render them injurious to users. *See* 21 U.S.C. § 361(a). Instead, the government asserts that the French Bronze Tablets are adulterated because they bear or contain a color additive statutorily presumed unsafe for use in cosmetics since there is no regulation in effect for the color additive's use in a cosmetic. *See* 21 U.S.C. § 361(e).

those product groups.[9]

Finally, we are unpersuaded by FBNH's argument that logic compels us to interpret the plain meaning of 21 U.S.C. § 376(a) to require:

> If there are regulations in effect permitting the use of canthaxanthin in a food or drug then a cosmetic shall not by reason of containing canthaxanthin be considered adulterated within the meaning of 21 U.S.C. § 361(e).

This is incorrect. Instead, we agree with District Judge Glasser that Claimant's syllogism is flawed. That canthaxanthin has been authorized for use in food and drug products is not a determination that it will be found safe and suitable for use in a cosmetic article. As we have said, several factors could undermine its suitability in a cosmetic: for example, varying concentrations of its use or interaction with other substances.[10]

We now arrive at the end of our journey through the thicket of the Food, Drug and Cosmetic Act. We are mindful of Learned Hand's consoling words on his foray through the Internal Revenue Act: "cross-reference to cross-reference, exception upon exception—couched in abstract terms ... but successfully concealed, ... which it is my duty to extract, but ... only after the most inordinate expenditure of time." I. Dilliard, The Spirit of Liberty 236 (3rd ed. 1960).

We affirm the judgment of the district court that the Claimant's FRENCH BRONZE TABLETS are adulterated pursuant to 21

U.S.C. § 361(e) and forfeitable pursuant to 21 U.S.C. § 334(a).

---

9. Contrary to the assertions in the Claimant's brief, it would not have been "just as easy" for Congress to provide that "a *food, drug or cosmetic* shall not, by reason of bearing or containing such additive in all respects in accordance with *its* regulation...." Apparently, Congress did not intend to create so sweeping an exemption from the poisonous and deleterious provisions of Title 21. We note that the statute does not indicate whether a drug which contains a color additive separately approved for use in a drug under § 376(b)(1) cannot be found adulterated within the meaning of § 351(a)(3), the comparable provision for poisonous and deleterious substances found in drug products.

10. In addition, we note that FBNH has not made any showing that the use of canthaxanthin in the tablets complies with the prescribed use set forth in the regulations promulgated for food and drug products. With regard to food, the F.D.A. has provided in part that canthaxanthin may be safely used as long as the quantity "does not exceed 30 milligrams per pound of solid or semisolid food or per pint of liquid food." *See* 21 C.F.R. 73.75(c)(1)(i). The F.D.A. permits canthaxanthin to be used for coloring ingested drugs "generally in amounts consistent with good manufacturing practice." *See* 21 C.F.R. 73.1075(b).