**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Marvin HENSON, Defendant–Appellant.**

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Bruce L. SUITERS, Defendant–Appellant.**

Nos. 94–50574, 94–50575.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec.
12, 1995, No. 94–50574.

Submitted Dec. 12, 1995,\* No. 94–50575.

Withdrawn from Submission June 17, 1996.

Resubmitted Oct. 18, 1996.

Decided Aug. 21, 1997.

---

\* The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P.

34(a) and 9th Cir. R. 34–4.

Lisa M. Bassis, Los Angeles, CA, for defendant-appellant Henson.

Peter M. Ferguson, Santa Barbara, CA, for defendant-appellant Suiters.

James P. Walsh and Michael Zweiback, Assistant United States Attorneys, Los Angeles, CA, for plaintiff-appellee.

Before: HUG, Chief Judge, BEEZER and KLEINFELD, Circuit Judges.

HUG, Chief Judge:

Marvin Henson and Bruce L. Suiters appeal their convictions and sentences for drug trafficking on numerous constitutional and evidentiary grounds. We have jurisdiction under 28 U.S.C. § 1291, and we affirm the judgment of the district court in all respects except for the conviction of Henson on one use of a firearm count. We remand for his resentencing.

I.

In June 1992, the Bureau of Alcohol, Tobacco, and Firearms ("ATF") along with the Los Angeles Police Department began a long-term investigation into PCP distribution in the area of 115 West 70th Street in Los Angeles. There are three structures on the lot that was under surveillance—115, 115–1/2, and 115–1/4 West 70th Street. Using a confidential informant, the ATF began making purchases from various dealers in the area. On June 9, 1992, the informant, who was wearing an audio transmitter, purchased one ounce of PCP from defendant Suiters. On June 12, 1992, at the direction of the ATF, the informant purchased $200.00 worth of PCP from Suiters. The informant made another purchase from Suiters on June 19, 1992. The investigation was suspended from July 1992 through June 1993 due to a variety

of other investigative demands, including the Los Angeles riots.

On June 30, 1993, the investigation was resumed and the informant went back to West 70th Street with an undercover vehicle. When the informant made a $50.00 PCP buy from Suiters, she witnessed codefendant Henson approach the vehicle with two nine-millimeter pistols in his waistband. Henson removed one of the pistols from his waist and circled the car with the gun in his hand until Suiters appeared to indicate that the informant "was O.K." Then Henson removed himself to the porch and watched the conclusion of the transaction. On other occasions the informant made several more small purchases from Suiters and from codefendant Anthony Jackson.[1] Henson was observed in the area on some of these occasions.

On July 29, 1993, the informant was directed by the ATF to contact Jackson and ask how much money she would need to purchase thirty-two ounces of PCP. He said that it would cost her $1,600.00. The informant then placed an order for sixty-four ounces of PCP. On August 3, 1993, the informant went to Jackson's residence, 115–1/2 West 70th Street, to consummate the transaction. She was given the PCP in exchange for $3,200.00. As she left the residence, the informant saw Henson enter the building.

On three occasions in November 1993, ATF Special Agent Arena conducted surveillance on the 115 West 70th compound. He witnessed Henson and Jackson standing in front of the house. Both would take bottles from passing cars and fill them with a liquid in exchange for unknown items. Henson was also observed with a blue steel handgun. Special Agent Arena testified that the defendants' actions were consistent with drug trafficking.

Based on these observations a search warrant was issued for three addresses: 115, 115–1/2, and 115–1/4 West 70th Street. While searching 115–1/4, the police discovered Henson in bed. When he stood up, a loaded handgun was found underneath his body. The police also found three glass vials and one baby food jar containing PCP.

Henson and Jackson were arrested and interviewed by the ATF. Henson made an initial statement which he later retracted. Henson allegedly asked the ATF to destroy his first statement and it was flushed down a toilet in his presence. Henson then asked permission to talk with Jackson prior to making a statement. After conferring with each other, Henson and Jackson made a joint statement where they allegedly admitted their involvement in PCP sales. Suiters was arrested on February 9, 1994, after the return of the first superseding indictment.

At trial, neither Henson nor Jackson testified. Henson was convicted of (1) conspiracy to distribute PCP and distribution of PCP in violation on 21 U.S.C. §§ 846, 841(a)(1); (2) two counts of distribution of PCP within 1000 feet of a junior high school in violation of 21 U.S.C. §§ 841(a)(1), 860; (3) two counts of use of a firearm during drug trafficking in violation of 18 U.S.C. § 924(c)(1); (4) possession of PCP with intent to distribute in violation of 21 U.S.C. § 841(a)(1); and (5) possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). Henson was sentenced to 45 years in prison and 8 years supervised release.

Suiters was convicted of (1) conspiracy to possess with intent to distribute and distribution of PCP in violation of 21 U.S.C. § 846; (2) three counts of distribution of PCP within 1000 feet of a school in violation of 21 U.S.C. §§ 841(a)(1), 860; and (3) use of a firearm during a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). Suiters was sentenced to 22–1/2 years incarceration and 8 years supervised release. Both defendants filed a timely appeal.

## II.

■ Henson and Suiters contend that Congress exceeded its power under the Commerce Clause in enacting 21 U.S.C. § 860, the Schoolyard Act, and 18 U.S.C. § 922(g), the felon in possession statute. Congress is empowered under the Commerce Clause to enact criminal legislation as long as the proscribed activity has a substantial economic

---

1. Jackson's appeal has not been consolidated before this panel with the appeals of Henson and Suiters.

effect on interstate commerce. *See* U.S. Const. Art. I, § 8, cl. 3; *Perez v. United States,* 402 U.S. 146, 150–51, 91 S.Ct. 1357, 1359–60, 28 L.Ed.2d 686 (1971). The Supreme Court recently reviewed the limitations inherent in the Commerce Clause in *United States v. Lopez,* 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995).

In *Lopez,* the Court held the Gun–Free School Zones Act, which criminalized the possession of a firearm within 1000 feet of a school, unconstitutional. The Court noted that there are three classes of activities that Congress can regulate under its commerce power: (1) the use of the channels of interstate commerce; (2) the instrumentalities of interstate commerce, or persons or things in interstate commerce; and (3) those activities having a substantial relation to interstate commerce. *Id.* at 558–59, 115 S.Ct. at 1629–30. The Court held that the statute was invalid because it did not involve any of the three classes of activities. *Id.* at 567–69, 115 S.Ct. at 1634; *see also United States v. Pappadopoulos,* 64 F.3d 522, 527 (9th Cir.1995) (holding that a house receiving natural gas from an out-of-state source does not have enough of a nexus with interstate commerce to confer federal jurisdiction for prosecution of arson affecting interstate commerce).

■ In reviewing the validity of a statute against a Commerce Clause challenge, we must determine whether a rational basis exists for a congressional finding that a regulated activity sufficiently affects interstate commerce. *See United States v. Martinez,* 49 F.3d 1398, 1400 (9th Cir.1995), *cert. denied,* — U.S. ——, 116 S.Ct. 749, 133 L.Ed.2d 696 (1996). When reviewed for constitutional infirmities, congressional enactments are presumed valid. *Gabrielson v. Montgomery Ward & Co.,* 785 F.2d 762, 765 (9th Cir.1986). We are obligated, whenever possible, to interpret a statute in a manner that renders it constitutionally valid. *Communications Workers of America v. Beck,* 487 U.S. 735, 762, 108 S.Ct. 2641, 2657, 101 L.Ed.2d 634 (1988). "When [a federal court] is asked to invalidate a statutory provision that has been approved by both Houses of the Congress and signed by the President, particularly an Act of Congress that confronts a deeply vexing national problem, it should only do so for the most compelling

constitutional reasons." *Mistretta v. United States,* 488 U.S. 361, 384, 109 S.Ct. 647, 661, 102 L.Ed.2d 714 (1989) (quoting *Bowsher v. Synar,* 478 U.S. 714, 736, 106 S.Ct. 3181, 3192, 92 L.Ed.2d 583 (1986) (Stevens, J., concurring)).

### A.

■ The Schoolyard Act, 21 U.S.C. § 860, is a penalty enhancement statute. Anyone who violates 21 U.S.C. § 841(a)(1) or § 856 by distributing, possessing with intent to distribute, or manufacturing a controlled substance, is subject to twice the maximum punishment authorized by section 841(b). We have unequivocally rejected similar Commerce Clause challenges to the Schoolyard Act on two occasions, *see United States v. McDougherty,* 920 F.2d 569, 572 (9th Cir. 1990), *cert. denied,* 499 U.S. 911, 111 S.Ct. 1119, 113 L.Ed.2d 227 (1991); *United States v. Thornton,* 901 F.2d 738, 741 (9th Cir.1990). Henson and Suiters allege that *Lopez* overruled these decisions. We disagree.

In *Lopez* the Court made clear that it was not overruling earlier Commerce Clause precedent. Instead, the Court stated that the Gun–Free School Zones Act "represents a sharp break with the long-standing pattern of federal firearms legislation." *Lopez,* 514 U.S. at 562, 115 S.Ct. at 1632 (quoting *United States v. Lopez,* 2 F.3d 1342, 1366 (5th Cir.1993)). The Court explicitly affirmed the long line of cases allowing the federal regulation of intrastate sales that affect interstate commerce the Commerce Clause. *Id.* at 550–58, 115 S.Ct. at 1626–30; *see, e.g., Hodel v. Virginia Surface Mining & Reclamation Ass'n,* 452 U.S. 264, 283, 101 S.Ct. 2352, 2363, 69 L.Ed.2d 1 (1981) (upholding the regulation of intrastate coal mining); *Perez,* 402 U.S. at 156–57, 91 S.Ct. at 1362–63 (allowing for the regulation of intrastate loansharking); *Wickard v. Filburn,* 317 U.S. 111, 129, 63 S.Ct. 82, 91, 87 L.Ed. 122 (1942) (allowing Congress to regulate the consumption of home grown wheat).

It has long been recognized that Congress has the power to ban the sales of certain drugs. *See, e.g., Minor v. United States,* 396 U.S. 87, 98 n. 13, 90 S.Ct. 284, 289, 24 L.Ed.2d 283 (1969). Congress' power ex-

tends to the regulation of intrastate drug sales. *See United States v. Walsh*, 331 U.S. 432, 437–38, 67 S.Ct. 1283, 1285–86, 91 L.Ed. 1585 (1947). This regulation is permissible because Congress has found, and the courts have consistently accepted as rational, that intrastate drug trafficking substantially affects interstate commerce. *E.g.*, 21 U.S.C. § 801(3); *United States v. Montes–Zarate*, 552 F.2d 1330, 1331 (9th Cir.1977), *cert. denied*, 435 U.S. 947, 98 S.Ct. 1532, 55 L.Ed.2d 545 (1978). As we have earlier concluded:

> It would be highly illogical to believe that such trafficking somehow ceases to affect commerce when carried out within 1000 feet of a school. There is no legal reason why Congress cannot choose to punish some behavior affecting commerce more harshly than other behavior, based upon its detriment to society.

*McDougherty*, 920 F.2d at 572 (footnote and citation omitted). We hold that *Lopez* does not change this analysis.

### B.

■ Henson also alleges that his conviction under 18 U.S.C. § 922(g)(1) must be reversed in light of *Lopez*. We find this argument meritless. Because *Lopez* declared the Gun–Free School Zones Act, 18 U.S.C. § 922(q), unconstitutional, Henson argues that 18 U.S.C. § 922(g)(1) was declared unconstitutional by implication. Henson's mistake is his assumption that *Lopez* declared all of 18 U.S.C. § 922 unconstitutional. However, *Lopez* only found constitutional problems with subsection 922(q) of Title 18. *Lopez*, 514 U.S. at 566, 115 S.Ct. at 1634. Section 922(g) is a totally independent section of Title 18 which has no connection to the Gun–Free School Zones Act.

There can be no doubt that 18 U.S.C. § 922(g) is constitutional under the Commerce Clause. As the statute reads:

> (g) It shall be unlawful for any person—
>
> (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;
>
> . . .
>
> to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which

has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922. The statute contains an express commerce limitation which was stipulated to by Henson in this case. We have already rejected challenges like Henson's. *See United States v. Collins*, 61 F.3d 1379, 1383–84 (9th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 543, 133 L.Ed.2d 446 (1995).

### III.

Henson and Suiters seek reversal of their convictions under 18 U.S.C. § 924(c)(1) in light of the Supreme Court's decision in *Bailey v. United States*, —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). Henson was convicted of two counts under 18 U.S.C. § 924(c)(1) for using a firearm in furtherance of a drug trafficking crime. Henson's first conviction was based on his circling of the confidential informant's vehicle with a gun during a drug sale on June 30, 1993. Henson's second conviction was based on his arrest, which occurred while he was lying on a loaded gun in his apartment. During the arrest the police found PCP in Henson's apartment. Suiters was convicted of one count on a conspiracy liability theory for Henson's use of a weapon on June 30, 1993. Henson and Suiters claim that *Bailey* requires reversal of all of their § 924(c)(1) convictions.

In *Bailey*, the Supreme Court examined the applicability of section 924(c)(1) to persons "using" a firearm while engaging in a drug trafficking crime. The applicable provision of the statute reads:

> Whoever, during and in relation to any ·... drug trafficking crime ... for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such ... drug trafficking crime, be sentenced to imprisonment for five years.... In the case of his second or subsequent conviction under this subsection, such person shall be sentenced to imprisonment for twenty years....

18 U.S.C. § 924(c)(1). The Supreme Court held that in order to "use" a firearm during a drug trafficking crime a defendant must actively employ the firearm. *Bailey*, —— U.S.

at ——, 116 S.Ct. at 506. Merely storing the gun near drugs does not constitute "use" under the statute. *Id.* at ——, 116 S.Ct. at 508. The Supreme Court's creation of the "active employment" test overruled Ninth Circuit authority holding that mere possession of a firearm is enough to support a conviction under 18 U.S.C. § 924(c)(1) if the jury could reasonably infer that the possessed gun could have played a role in the crime. *See, e.g., United States v. Torres–Rodriguez,* 930 F.2d 1375, 1385 (9th Cir. 1991), *abrogated by Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472.

■ Because Henson and Suiters' convictions were pre-*Bailey,* the jury was given the following instructions regarding 18 U.S.C. § 924(c)(1):

The phrase "uses or carries a firearm" means having a firearm or firearms available to assist or aid in the commission of the crimes charged....

In determining whether Defendant Marvin Henson used or carried a firearm, you may consider ... the proximity of the Defendant to the firearm in question, the usefulness of the firearm to the crime charged, and the circumstances surrounding the presence of the firearm. The Government is not required to show that the Defendant actually displayed or fired the weapon. The Government is required, however, to prove beyond a reasonable doubt that the firearm was in the Defendant's possession or under the Defendant's control at the time that a drug trafficking crime was committed.

While this instruction properly stated the law of this circuit pre-*Bailey,* it is no longer correct. Mere possession of a gun during a drug trafficking crime is no longer sufficient to sustain a conviction under § 924(c)(1). *See United States v. Garcia,* 77 F.3d 274, 277 (9th Cir.1996).

■ The defendants did not object to the erroneous instructions. When a defendant does not object at trial to an alleged error, we review the matter for plain error under Federal Rule of Criminal Procedure 52(b). *See Johnson v. United States,* —— U.S. ——,

——, 117 S.Ct. 1544, 1548, 137 L.Ed.2d 718 (1997). Under the test set forth in *United States v. Olano,* 507 U.S. 725, 732, 113 S.Ct. 1770, 1776, 123 L.Ed.2d 508 (1993), before we can consider an error such as this, there must be (1) "error," (2) that is "plain," and (3) that "affects substantial rights." If these three conditions are met, there is a fourth requirement that must be met before we may exercise our discretion to correct the error. We must also find that the error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings," before we may exercise our discretion to correct the error. *Id.* (quoting *United States v. Young,* 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985)).

■ With regard to Henson's conviction for carrying or using a gun on June 30, 1993, we conclude that the fourth requirement of *Olano* is not met. The prosecution presented testimony that showed that Henson was engaging in a drug trafficking crime with two nine-millimeter pistols in his waistband on June 30, 1993. Carrying the pistols while engaging in a drug trafficking crime will support a conviction under 18 U.S.C. § 924(c)(1). *See* 18 U.S.C. § 924(c)(1) ("Whoever ... uses *or carries* a firearm ... ") (emphasis added). Furthermore, the prosecution's evidence was that Henson removed one of the pistols from his waistband and walked around the informant's car. This supports a conviction under the "use" provision. *See also United States v. Davis,* 76 F.3d 311, 315 (9th Cir.1996) (holding that a defendant who displays a weapon during a drug trafficking crime can be properly convicted as having "used" the weapon). There was no testimony presented by either side that Henson was merely possessing the weapon. Henson's contention at trial was that he was not present or that he did not have a firearm. Therefore, when the jury found Henson guilty under 18 U.S.C. § 924(c)(1), the jury necessarily found that Henson was present and either carrying or using the weapon.

We similarly sustain the conviction of Suiters under 18 U.S.C. § 924(c)(1).[2] Suiters

---

**2.** Suiters also challenges his conviction under 18 U.S.C. § 924(c)(1) on sufficiency of the evidence grounds. That issue is discussed below. *See* subpart VI(B), *infra.*

was convicted under a conspiracy liability theory for Henson's carrying or use of gun on June 30, 1993. If the conviction for the primary defendant is proper under 18 U.S.C. § 924(c)(1), then *Bailey* does not affect the conviction of the coconspirator.

▆▆▆ Henson's second conviction for use of a firearm while drug trafficking is more troublesome. On December 1, 1993, the police entered Henson's residence with a search warrant. When Henson sat up, a loaded gun was found under his body. A further search of the apartment revealed a baby food jar filled with PCP. Henson was charged and convicted for using or carrying a gun while possessing PCP with the intent to distribute. We note that Henson cannot properly be convicted for "using" the firearm. Henson did not actively employ the firearm in the presence of the police officers. As the Supreme Court recently concluded:

> Some might argue that the offender has "actively employed" the gun by hiding it where he can grab and use it if necessary. In our view, "use" cannot extend to encompass this action. If the gun is not disclosed or mentioned by the offender, it is not actively employed, and it is not "used." To conclude otherwise would distort the language of the statute as well as create an impossible line-drawing problem.

*Bailey,* —— U.S. at ——–——, 116 S.Ct. at 508–09. Here, Henson did not threaten the officers with the firearm or disclose its presence.

We also conclude that Henson cannot properly be convicted for "carrying" a weapon on December 1, 1993. The word "carry" in the statute must be given its ordinary and natural meaning. In its normal meaning, to lie on top of a weapon is not to carry it. "[I]n order for a defendant to be convicted of 'carrying' a gun in violation of section 924(c)(1), the defendant must have transported the firearm on or about his or her person." *United States v. Hernandez,* 80 F.3d 1253, 1258 (9th Cir.1996). Because there was no evidence presented to the jury that Henson carried or actively employed a firearm on December 1, we reverse Henson's second firearm conviction under section 924(c).

## IV.

▆▆▆ Henson also alleges that his conviction for conspiracy to distribute PCP in violation of 21 U.S.C. § 846 must be overturned because the indictment was vague and insufficient and because it did not properly inform him of the time frame of the alleged conspiracy with which he was charged. Henson alleges that the allegedly improper indictment allowed the Government to surprise him at trial with evidence of an earlier conspiracy. We review the sufficiency of an indictment *de novo*. *United States v. Ahumada–Avalos,* 875 F.2d 681, 683 (9th Cir.), *cert. denied,* 493 U.S. 837, 110 S.Ct. 118, 107 L.Ed.2d 79 (1989).

▆▆▆ An indictment is sufficient if it "first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Vroman,* 975 F.2d 669, 670–71 (9th Cir.1992) (quoting *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974)), *cert. denied,* 507 U.S. 996, 113 S.Ct. 1611, 123 L.Ed.2d 172 (1993). Henson contends that the indictment is defective for failure to comply with the first requirement. The Government conducted two separate investigations at 115 West 70th Street—one in 1992 and again in 1993. In 1992, Suiters sold drugs to the confidential informant. However, Henson was not seen in the area until the investigation was resumed in 1993. Henson alleges that the indictment did not inform him that he would be charged in a conspiracy dating back to 1992, that the 1992 evidence was admitted against him in a surprise, and that the evidence of two conspiracies—one of which did not involve him as a member—prejudiced him at trial.

The indictment alleged that there was a conspiracy to distribute PCP among Jackson, Suiters, and Henson. The indictment listed 18 overt acts committed by the defendants in furtherance of the conspiracy. The overt acts listed included the PCP sales by Suiters in 1992. Although Henson was not personally charged with any crimes from the 1992 incident, he cannot claim surprise by the allegations against Suiters. Because the in-

dictment listed the overt acts, the indictment gave Henson proper notice of the scope of the charges against him. *See United States v. Laykin,* 886 F.2d 1534, 1542 (9th Cir.1989), *cert. denied,* 496 U.S. 905, 110 S.Ct. 2586, 110 L.Ed.2d 267 (1990) (reasoning that overt acts listed in indictment provided sufficient information for the defendant to prepare a defense).

 Henson alleges that even if he was aware of the charges against Suiters, the Government presented evidence of two conspiracies at trial, only one of which he was involved in, the 1993 conspiracy. He claims that he was prejudiced because evidence of the 1992 conspiracy was introduced against him at the joint trial. The Government counters by stating that the evidence presented at trial shows only a single conspiracy and that the indictment properly charged that conspiracy.

 We will find that a single conspiracy exists if "any rational juror could have found a single conspiracy beyond a reasonable doubt." *United States v. Patterson,* 819 F.2d 1495, 1502 (9th Cir.1987). The standard of review is a "highly deferential" one. *United States v. Terry,* 911 F.2d 272, 278 (9th Cir.1990). A conviction will stand if "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560 (1979) (emphasis in original).

Viewed in the light most favorable to the Government, the evidence shows a single conspiracy. The Government does not have to prove that a defendant participated in every phase of the conspiracy. *United States v. DiCesare,* 765 F.2d 890, 900 (9th Cir.1985), *as amended,* 777 F.2d 543 (9th Cir.1985). The evidence at trial showed that Suiters had been selling PCP at the same corner from June 1992 to December 1993. Henson was seen working with Suiters in June of 1993 and with Jackson on several occasions. Evidence was introduced at trial that PCP traffickers commonly operate in pyramid structures with wholesalers using street salesmen and street bodyguards. Evidence was also introduced that it would be very unusual to see competing distributors operating on the same street corner.

 Based on this testimony, the jury was entitled to infer that Suiters was involved in a conspiracy to sell PCP at 115 West 70th that started before June 1992. The jury could infer that Henson had joined the conspiracy by June of 1993. A single conspiracy does not need to have all of the same conspirators throughout the conspiracy. *See United States v. Abushi,* 682 F.2d 1289, 1294–95 (9th Cir.1982). "[A] conspirator who joins a pre-existing conspiracy is bound by all that has gone on before in the conspiracy." *United States v. Saavedra,* 684 F.2d 1293, 1301 (9th Cir.1982). We hold that Henson was properly charged and that the indictment was not defective.

## V.

Henson and Suiters challenge several rulings on evidentiary matters presented before the district court. Specifically, the defendants allege that the district court erred by (1) quashing a subpoena duces tecum directed to the ATF's custodian of records, (2) excluding all references to the confidential informant's probation report, and (3) failing to exclude evidence obtained pursuant to an allegedly defective search warrant. The defendants contend that each of these errors requires reversal.

## A.

 Henson filed a subpoena duces tecum on the ATF's custodian of records seeking the portion of the ATF policy manual which deals with the interrogation and recording of statements by witnesses. Henson sought the manual to question the interrogating officers regarding their reasons for not recording the statements given by Jackson and Henson.[3] The trial court quashed the

---

**3.** There is a strong disagreement between the parties regarding whether the manual was also sought to explain the ATF's destruction of Henson's first statement. When Henson was first interviewed, he gave a statement which he later recanted. At his request, the first statement was destroyed. Henson insists that the issue was brought before the district court on May 3 regarding the subpoena duces tecum. Our review of the record reveals no such statement. However, this issue is immaterial to our decision in this matter.

subpoena on two grounds: (1) because the evidence could be obtained by questioning the witnesses directly and (2) because Henson did not follow the procedures for obtaining ATF records outlined in 27 CFR § 71.27(e)(4). A district court's decision on discovery matters is reviewed for an abuse of discretion. *See United States v. Malquist,* 791 F.2d 1399, 1402 (9th Cir.), *cert. denied,* 479 U.S. 954, 107 S.Ct. 445, 93 L.Ed.2d 394 (1986) (refusal to release grand jury transcript).

The ATF is a branch of the Department of the Treasury which has specific regulations governing the disclosure of government manuals. *See* 27 CFR § 71.27. These regulations require a review process and five working days to process a demand for a manual. *Id.* § 71.27(e)(4). *Id.* An ATF officer who provides access to such a manual without conforming to the process is subject to immediate dismissal. *Id.* § 71.27(g). There is no dispute that Henson did not follow the proper procedures and did not allow the ATF enough time to process the request.

The ATF disclosure procedures were adopted pursuant to the Federal Housekeeping statute, 5 U.S.C. § 301, which authorizes the head of each executive department to prescribe regulations governing the procedure by which its records will be made available to the public. That statute reads in relevant part:

> The head of an Executive department or military department may prescribe regulations for ... the custody, use, and preservation of its records, papers, and property. This section does not authorize withholding information from the public or limiting the availability of records to the public.

5 U.S.C. § 301. The Supreme Court has stated that a similar statute does not allow an agency to refuse to disclose information, it does allow an agency to choose who may disclose the information and the procedure to be followed for such disclosure. *United States ex rel. Touhy v. Ragen,* 340 U.S. 462, 469–70, 71 S.Ct. 416, 419–20, 95 L.Ed. 417 (1951); *see also Swett v. Schenk,* 792 F.2d 1447, 1451–52 (9th Cir.1986) (holding that a federal officer cannot be held in contempt for refusing to respond to a party seeking discovery from a federal department in violation of valid departmental regulations).

We conclude that it was not an abuse of discretion to require Henson to follow the prescribed regulations in this case. Henson failed to give the ATF five working days to process his request for the manual. Henson provided the district court with no reason justifying his failure to comply with ATF regulations. There was nothing to prevent Henson from immediately serving another subpoena on the ATF that followed the ATF guidelines. No prejudice would have resulted from properly re-serving the subpoena. Additionally, the district court ruled that Henson could cross-examine the witnesses on the contents of the manual. At trial, Henson was able to question the officers on their decision not to take notes and on the destruction on Henson's first statement. The district court did not abuse its discretion in quashing the discovery request for the manual.

**B.**

The key witness against Henson and Suiters was the Government's confidential informant, who had purchased PCP from Suiters and Jackson. At trial, Henson's lawyer attempted to use a probation report to impeach the Government's confidential informant. After determining that the report had been sealed in a California state proceeding, the trial court ordered the report excluded until the defendants attempted to have the report unsealed in the appropriate California court. Henson and Suiters allege that the trial court erred in not admitting the report and that the error was not harmless. We review a trial court's decision regarding the admissibility of impeachment evidence for an abuse of discretion. *See United States v. Charmley,* 764 F.2d 675, 677 (9th Cir.1985).

On direct examination of the informant, the Government elicited testimony regarding the informant's past criminal history. The informant stated that her criminal record consisted of three minor convictions. On cross-examination, Henson's attorney attempted to discredit the informant's claims of a short police record based on statements in the informant's probation report from a 1989 arrest for credit card forgery. Henson's attorney attempted to question the informant

regarding statements she made to the probation officer. The trial judge, who had previously served as a judge in the California state system, realized that the report was a sealed state probation report. At the conclusion of the day's testimony, the district court asked counsel where he obtained the report. When the court realized that the report was not obtained through proper channels, the judge suggested that the Government contact the California state entity charged with protecting the confidentiality of probation reports.

The next morning, an attorney for the County of Los Angeles appeared and claimed that the document was privileged. After hearing argument, the trial court ruled that the probation report could not be used in the trial. The judge noted that the probation report could only be unsealed by a California state court. Therefore, the trial judge ruled that the defense needed to attempt to unseal the report in state court prior to using it in federal court. The judge also noted that the state court would probably allow the report to be unsealed and that if the state court refused, he might be willing to order the document released. However, the court ruled that the state court remedies must be exhausted first.

We hold that this action was not an abuse of discretion. The trial court recognized that the sealed probation report was pertinent. However, the court asked Henson to obtain the document through proper channels. Under California law, a probation report cannot become a public document without a state court order. Cal.Penal Code § 1203.05. To minimize the possible prejudice to the defendant, the court allowed Henson to continue cross-examining the informant about the contents of the report. The court would not allow Henson to refer to the actual report, however.

Henson never bothered seeking to have the report unsealed by a California state court. If Henson had unsealed the report, the trial court stated that he would have allowed the document into evidence and that the confidential informant would have been recalled. The decision not to allow the report into evidence at the time the report was presented to the court was not error.

### C.

▮ ATF officers obtained a search warrant for 115, 115–1/2, and 115–1/4 West 70th Street and executed that warrant on December 1, 1993. Henson alleges that the warrant and the affidavit to support it did not show probable cause justifying a search of 115–1/4 West 70th Street. As such, Henson alleges that all of the evidence obtained through that search should have been excluded from evidence. A magistrate judge's finding of probable cause is reviewed for clear error. *United States v. Elliott*, 893 F.2d 220, 222 (9th Cir.), *as amended*, 904 F.2d 25, *cert. denied*, 498 U.S. 904, 111 S.Ct. 268, 112 L.Ed.2d 224 (1990). Because Henson's motion to suppress was denied without findings of fact, the district court's order denying the motion will be upheld if there is a reasonable view to support the order. *See United States v. Becker*, 23 F.3d 1537, 1539 (9th Cir.1994).

In support of the issuance of the warrant, the government submitted an affidavit of a federal officer who testified that he had observed Henson and Jackson selling what he believed to be drugs in front of 115 West 70th. Because the police only witnessed Henson and Jackson selling PCP in front of 115 West 70th, Henson asserts that the warrant must have been limited to that structure and could not be extended to 115–1/2 or 115–1/4 West 70th. Henson notes that the magistrate was given no information to provide probable cause for a search of 115–1/4 West 70th. We disagree.

Probable cause to search is defined as "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). The affidavit submitted with the application for the search warrant stated that, in the officer's experience, drug dealers normally hid drugs in their place of residence. The affidavit further noted that Jackson resided at 115–1/2 West 70th while Henson resided at 115–1/4 West 70th. We have stated:

> Direct evidence that contraband or evidence is at a particular location is not essential to establish probable cause to search the location. A magistrate is enti-

tled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense. *In the case of drug dealers, evidence is likely to be found where the dealers live.*

*United States v. Angulo–Lopez,* 791 F.2d 1394, 1399 (9th Cir.1986) (emphasis added) (citations omitted). Therefore, when the warrant stated that Henson resided in 115–1/4 West 70th, a search of that location was justified.

### VI.

■■■ Suiters alleges that there is insufficient evidence to support his conviction for conspiracy to distribute PCP and for his conviction of use of a firearm to aid in distribution. We will not disturb a jury's finding of guilt if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Shortt Accountancy Corp.,* 785 F.2d 1448, 1453 (9th Cir.), *cert. denied,* 478 U.S. 1007, 106 S.Ct. 3301, 92 L.Ed.2d 715 (1986) (quoting *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2788) (emphasis in original). We examine the record and determine if a jury "could rationally choose the hypothesis that supports a finding of guilt rather than the hypotheses that are consistent with innocence." *United States v. Lopez–Alvarez,* 970 F.2d 583, 589 (9th Cir.), *cert. denied,* 506 U.S. 989, 113 S.Ct. 504, 121 L.Ed.2d 440 (1992).

### A.

■■■ Suiters admits that he distributed PCP to the Government's confidential informant on several occasions. However, Suiters claims that he was an independent drug distributor with no relation to Jackson or Henson. Suiters alleges it was error, therefore, to convict him of conspiracy to distribute and to charge him with the independent drug sales of Jackson and Henson.

The record, viewed most favorably to the government, shows the following: (1) Suiters regularly distributed PCP across the street from the house of codefendants Jackson and Henson; (2) on June 30, 1993, Suiters utilized Henson as armed security for the sale of PCP; (3) rival drug businesses do not typically operate on the same street corner; (4) Jackson supplied Suiters with PCP; and (5) Suiters took an eight-ounce pour of PCP from Jackson on August 25, 1993. With this evidence, a rational trier of fact could have concluded that Suiters was working in concert with Henson and Jackson.

### B.

Suiters argues that he is entitled to a reversal of the gun charge because he was not working in concert with Henson, the individual with the gun on June 30, 1993. However, as explained above, *see* subpart VI(A), *supra,* there is ample evidence for the jury to conclude that Henson and Suiters were acting in concert.

■■■ Suiters then argues that even if he had been acting with Henson, he had no knowledge that Henson would brandish his firearm. Under the rule of *Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), each conspirator is liable for the criminal acts of a coconspirator if: (1) the substantive offense was committed in furtherance of the conspiracy, and (2) the offense could reasonably have been foreseen to be a natural consequence of the unlawful agreement. *Id.* at 647–48, 66 S.Ct. at 1184–85. Where the substantive offense is the basis for § 924(c) liability, the issue is whether the defendant could reasonably foresee that a firearm would be used. *United States v. Castaneda,* 9 F.3d 761, 766 (9th Cir.1993), *cert. denied,* 510 U.S. 1166, 114 S.Ct. 1195, 127 L.Ed.2d 544 (1994). There is no requirement that the defendant have actual knowledge as to the presence of a weapon. *Id.* at 768.

We have long recognized the connection between drug sales and guns. *E.g., United States v. Johnson,* 886 F.2d 1120, 1123 (9th Cir.1989), *cert. denied,* 494 U.S. 1089, 110 S.Ct. 1830, 108 L.Ed.2d 959 (1990). The evidence at trial, viewed most favorable to the Government, shows that Suiters saw Henson with the gun and signalled him that the confidential informant was "O.K." That evidence supports a conviction.

## VII.

Following his conviction, Suiters filed a motion for a new trial on the basis that the confidential informant had lied on the stand and that the Government had allowed her to do so. This motion was denied. Suiters alleges that he and Henson were denied due process due to the use of perjured testimony. The Government responds that there was no perjury and that even if there was, it was harmless. We review a district court's refusal to grant a new trial for an abuse of discretion. *United States v. Krasny*, 607 F.2d 840, 845 (9th Cir.1979), *cert. denied*, 445 U.S. 942, 100 S.Ct. 1337, 63 L.Ed.2d 775 (1980).

Although the use of perjured testimony to obtain a conviction is improper, *United States v. Agurs*, 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976), the burden on the defendant is heavy to establish that perjured testimony was used. When presented as a motion for a new trial, before the defendant can prevail:

> (1) It must appear from the motion that the evidence relied on is, in fact, newly discovered, i.e., discovered after trial; (2) the motion must allege facts from which the court may infer diligence on the part of the movant; (3) the evidence relied on must not be merely cumulative or impeaching; (4) must be material to the issues involved; and (5) must be such as, on a* new trial, would *probably* produce an acquittal.

*United States v. Steel*, 759 F.2d 706, 713 (9th Cir.1985) (emphasis in original).

The alleged perjured testimony involved whether the informant had arranged a meeting with Jackson on August 25, 1994. In a tape recorded conversation with Jackson, the informant said, "I'ma give you a call at 6:00 and then I'll let you know when I'm coming through, and I'll just come on through." At 6:00 that evening, the informant went to Jackson's house and saw Jackson give Suiters an eight-ounce pour of PCP. At trial, the informant testified:

Q: And is it a fact—I'll ask you again— that you set up a meeting to go to Jackson's house at 6:00 o'clock that evening?

A: I did not set up the meeting that —

Q: You just—excuse me, go ahead.

A: No I did not—the—when I went to Jackson's house, it was not a permanent set time that I would be there. And if I'd set up a meeting that was on tape, then the meeting would have been pursued and carried out with Jerry Arena and the rest of the task force.

Q: Unless you weren't authorized to go that evening, right?

A: I was authorized by Jerry Arena to make myself—at any time that was available, to make myself available in the neighborhood so they could know my face.

Suiters contends that the informant lied on the stand when she stated that there was no pre-arranged meeting with Jackson that evening. Suiters argues that this evidence is critical because this meeting is the only evidence that puts Suiters in the Jackson compound. Suiters further contends that the tape shows that the informant went over to Jackson's to get an unofficial commission pour from Jackson without the ATF's knowledge.

This alleged perjury does not warrant a new trial. First, it is doubtful that this was perjury. The trial testimony does not indicate that no meeting was arranged, only that a definite time for the meeting was not set. Any inconsistency was known at trial and the witness was cross-examined about the statement. Thus, Suiters cannot claim surprise. Furthermore, this evidence does not go to the key issue—whether Suiters was in the house. Thus even if we were to accept the arguments of the defendant, there is no reason to believe that it would change the outcome of the trial.

## VIII.

Henson and Suiters contend that they were provided ineffective assistance by their trial counsels and that they were prejudiced thereby. Henson alleges that his attorney refused to allow him to testify on his own behalf, failed to call Jackson to testify, failed to object to numerous pieces of inadmissible hearsay, failed to request proper jury instructions, did not move to sever his trial from Suiters', and that these errors were cumulative and tainted the guilt determination. Suiters alleges that he was denied

effective assistance of counsel because his trial counsel failed to call for a competency hearing. Whether a defendant receives effective assistance of counsel is a mixed question of law and fact that we review *de novo*. *United States v. Olson*, 925 F.2d 1170, 1173 (9th Cir.1991).

■■■ As a general rule, claims of ineffective assistance of counsel should be made through a collateral proceeding rather than on direct appeal. In this court, "[t]he customary procedure for challenging the effectiveness of defense counsel in a federal criminal trial is by collateral attack on the conviction under 28 U.S.C. § 2255." *United States v. Birges*, 723 F.2d 666, 670 (9th Cir.), *cert. denied*, 466 U.S. 943, 104 S.Ct. 1926, 80 L.Ed.2d 472, *and cert. denied*, 469 U.S. 863, 105 S.Ct. 200, 83 L.Ed.2d 131 (1984). These claims are ordinarily only reviewed in collateral proceedings because such claims usually cannot be resolved without the development of facts outside the record. *United States v. Sitton*, 968 F.2d 947, 960 (9th Cir.), *cert. denied sub nom. Romero v. United States*, 506 U.S. 979, 113 S.Ct. 478, 121 L.Ed.2d 384 (1992), *and cert. denied*, 507 U.S. 929, 113 S.Ct. 1306, 122 L.Ed.2d 695 (1993).

Both defendants' claims are particularly in need of having more facts developed. For example, it is unclear as to why Henson was not called to testify. In a letter to the trial judge filed on August 23, 1994, Henson stated that his counsel refused to call him to testify. On October 11, 1994, Henson stated that he did not testify because his attorney told him that it was not necessary. In another letter also filed on October 11, 1994, Henson states that his attorney did not think that he should testify because of his extensive criminal record. Without having more facts about the choices that Henson's attorney made, it is impossible to determine if Henson was denied effective assistance. Similarly, the record needs to be developed with regard to Suiters's claims. We therefore decline to reach this issue on direct appeal.

## IX.

■■■ Suiters argues that the district court erred in not calling for a competency hearing *sua sponte* when the court was informed that Suiters suffered from a mental disability. Suiters argues that the district court was aware of the alleged disability at sentencing when trial counsel argued for a downward departure based on lack of mental capacity. In review, we examine the record to determine "whether evidence of incompetence was such that a reasonable judge would be expected to experience a genuine doubt respecting the defendant's competence." *United States v. Lewis*, 991 F.2d 524, 527 (9th Cir.) (quoting *Chavez v. United States*, 656 F.2d 512, 516 (9th Cir.1981)), *cert. denied*, 510 U.S. 878, 114 S.Ct. 216, 126 L.Ed.2d 172 (1993).

There is no evidence that Suiters acted irrationally at any time during the trial. On August 25, 1994, Suiters sent a letter to the court requesting dismissal of count one and replacement of counsel due to alleged ineffective assistance. The eleven page letter is cogent and thorough. Additionally, Suiters argued before the judge at sentencing. The judge stated that Suiters was a "[v]ery articulate young man" whose arguments were "right on." The record contains no examples of acts on the part of Suiters that would raise doubts as to his competence. The trial judge did not err by not calling for a *sua sponte* competency hearing.

## X.

■■■ Henson and Suiters allege that the district court erroneously computed their sentences. Henson contends that the court failed to consider the Government's sentence manipulation.[4] Suiters contends that the district court erred in refusing to depart downward due to Suiters's alleged diminished mental capacity. To the extent that Henson seeks review of the district court's discretionary decision not to depart downward from the Guidelines, we cannot consider this claim. The "discretionary refusal to depart downward is not reviewable on appeal." *United*

---

4. Henson also argues that the trial court should not have treated his two convictions under 19 U.S.C. § 924(c) as a first and subsequent conviction for sentencing purposes. However, because we reverse Henson's second conviction under 18 U.S.C. § 924(c), we decline to reach this issue.

*States v. Morales,* 898 F.2d 99, 101 (9th Cir.1990). To the extent that Henson is arguing that the district court erred in determining the amount of PCP for which he should have been sentenced, we simply disagree.

### A.

 The district court sentenced Henson to the statutory minimum of twenty-years for possession with intent to distribute 269 grams of PCP. Henson alleges that a lesser amount of PCP should have formed the basis for the sentence because of "sentence entrapment." Sentence entrapment occurs when "a defendant, although predisposed to commit a minor or lessor offense, is entrapped in committing a greater offense subject to greater punishment." *United States v. Staufer,* 38 F.3d 1103, 1106 (9th Cir.1994) (citation omitted). Henson notes that the confidential informant was purchasing only small quantities of PCP until she called up Jackson and offered to purchase sixty-four ounces. Henson alleges that the conspirators were only willing to sell the large amount of PCP because of the large amount of money offered by the informant.

The Government responds that the defendants were willing to sell large amounts of PCP without any prompting by the Government's confidential informant. After the sixty-four ounce sale, Jackson told the informant that he could provide all of the PCP that the informant wanted.

The issue of sentencing entrapment was not raised before the district court. However, sentencing entrapment was not recognized as a basis for reduction of a sentence until *United States v. Staufer* was decided fifteen days after sentencing. When possible error is not objected to at trial, we ordinarily review for plain error. *E.g.,* Fed.R.Crim.P. 52(b); *United States v. Karterman,* 60 F.3d 576, 579 (9th Cir.1995). Here, however, any error was not plain until *Staufer* was decided. Under these circumstances we review for harmless error. *See Johnson,* —— U.S. at ——, 117 S.Ct. at 1544.

We find no error in the district court's sentence calculation. Even if sentencing entrapment did exist as a possible reason for a lesser sentence at the time of sentencing, neither defendant would have been eligible for a lesser sentence based on sentence entrapment. The evidence in this case does not support a theory of sentencing entrapment. The defendants showed that they were willing to sell as much PCP as the informant was willing to buy. They were not pressured into selling large amounts of PCP because of the informant—they entered the transaction willingly and enthusiastically.

### B.

 Suiters argues that the district court erred in not lowering his sentence because of reduced mental capacity. While we may review a sentencing court's refusal to depart downward where the refusal rested on the court's conclusion that it did not possess the discretion to depart downward, we have no jurisdiction to review where the court reached its decision based on its belief that the exercise of its discretion was unwarranted. *United States v. Robinson,* 958 F.2d 268, 272 (9th Cir.1992). The district court ruled that Suiters did not qualify for a downward departure because it determined that Suiters' actions were not caused by his diminished mental capacity. "Since the district court was exercising its discretion in refusing the departure, we have no jurisdiction over this issue." *Id.*

### XI.

We **REVERSE** Henson's second conviction under 18 U.S.C. § 924(c)(1). We **AFFIRM** the judgment of the trial court in all other respects. We **REMAND** Henson's case to the district court for resentencing.