**Joanne BLIGHT, Plaintiff,**

v.

**CITY OF MANTECA, et al., Defendants.**

**No. 2:15–cv–2513 WBS AC**

United States District Court, E.D. California.

Signed 11/4/2016

Filed 11/7/2016

Sanjay Stephen Schmidt, Law Office of Sanjay S. Schmidt, San Francisco, CA,

Jeffrey A. Silvia, Law Office of Jeffrey A. Silvia, APC, Michael F. Babitzke, Michael F. Babitzke, Inc., Stockton, CA, for Plaintiff.

Dale Long Allen, Jr., Kevin P. Allen, Allen Glaessner Hazelwood & Werth LLP, San Francisco, CA, for Defendants.

## ORDER

### ALLISON CLAIRE, UNITED STATES MAGISTRATE JUDGE

Plaintiff's pending Motion To Compel (ECF No. 13) was referred to the undersigned by E.D. Cal. R. ("Local Rule") 302(c)(1). The discovery dispute involves a Search Warrant that authorized the Manteca police to search 5858 E Carpenter Rd. Stockton, CA 95215. That location was described as:

> farm property containing two modular homes, chicken coops and a small barn and various outbuildings SEE EXHIBIT "D" for exact details of area to be searched; including all room s, attics, basements, and other parts therein, the surrounding grounds and any garages, storage rooms, trash containers, and outbuildings of any kind located thereon.

ECF No. 20–3 at 16 (Exhibit A to the Search Warrant) (emphasis added). However, in addition to searching the modular home at 5858 E Carpenter Rd, the police searched the modular home at **5846 E Carpenter Rd.** Plaintiff, a 74–year-old woman, lived at the latter address.[1] According to plaintiff, the police broke down her door, entered her home, seized her, detained her on the street, and searched her home.

In relation to plaintiff's civil rights claims arising from the search, she seeks discovery about and from the Confidential Informant ("CI") who provided the infor-

mation upon which the Search Warrant was based. Plaintiff seeks "Exhibit C" to the Search Warrant affidavit, and testimony from defendant Garcia about what the CI told him. For the reasons that are set forth below, the undersigned will grant plaintiff's motion in part, but will limit discovery to tightly controlled "Attorneys' Eyes Only" disclosures.

## I. BACKGROUND

On October 9, 2014, defendant Armando Garcia (a detective with the Manteca Police Department), obtained a search warrant for "5858 E Carpenter Rd., Stockton, ... a farm property containing two modular homes ...," and for Marlin Lee Ford, who lived here. ECF 20–3 at 16. Garcia submitted a Statement of Probable Cause in support of his request for a search warrant. ECF No. 20–3 at 12–15. The facts that are claimed to support probable cause for the requested search are contained entirely in Exhibit C to the Statement. Id. at 12.[2] Exhibit C, in turn, was sealed by the state court judge who signed the Search Warrant, because, according to defendants, it contains information gleaned from the CI, and its disclosure would identify the CI.

The two modular homes described in the search warrant had separate addresses. Although the search warrant made reference to "two modular homes," it made specific reference to the *address* of only one of them–5858 E Carpenter Rd.—not the address where plaintiff lived. Id. Plaintiff and her husband own the home at 5846 E Carpenter Rd., pay property taxes on it, and have the utilities and telephone line registered under their names, according to plaintiff. ECF No. 20 (Joint Statement) at 13. The home has its own mailbox with

---

1. Any search of the modular home at 5858 E Carpenter Rd. is not at issue here.

2. The rest of the Statement is about Garcia's general experience, knowledge about marijuana operations, and the reliability of the CI.

"5846" on it, and those numbers are "prominently displayed on the front of the residence." Id.

The Statement included Exhibit D, which is apparently a Google Maps print-out of the property on which 5858 E Car-penter Rd. sits. See ECF No. 20–3 at 18. Apparently, defendant Osborn drew lines around what he considered to be the prop-erty to be searched, based upon input from the CI. It is not clear from the copy of Exhibit D provided to the court, whether the lines included or excluded plaintiff's home, and defendants' counsel stated at the hearing that he does not know where the lines are drawn.

Plaintiff sued Garcia, Osborn, the City of Manteca and others, asserting a Section 1983 claim for Fourth Amendment viola-tions and asserting state law claims.

## II. THE DISCOVERY DISPUTE

### A. Document Requests

Plaintiff served the City of Manteca with a request for production of documents which called for, among other things, the production of "all DOCUMENTATION concerning statements of and/or interviews with ... informants ...." See ECF No. 20–1 at 21 ¶ 35(b).[3] It also requested pro-duction of "Exhibit C, as referenced in Defendant Armando Garcia's 'Statement of Probable Cause' Affidavit.'" Id. ¶ 35(c)(i). Manteca objected to production of Exhibit C on the grounds that it was sealed by the state court judge, and production would therefore violate the court order. Id. Manteca objected to both requests on grounds of "confidential information privi-lege and/or government information privi-lege." ECF No. 20–1 at 23.

Plaintiff served Garcia with a request for production of documents that support

the denials in his Answer. See ECF No. 20–1 at 27 ¶ 28. Garcia objected on the grounds that the request includes Exhibit C, which was sealed by the state court judge, and production would therefore vio-late the court order, and also on grounds of "confidential information privilege and/or government information privilege." ECF No. 20–1 at 27.

Plaintiff also requested relevant text messages from Garcia. ECF No. 20–1 at 31–32 ¶ 38. Garcia objected to producing "two text message exchanges with the confidential informant relating to this inci-dent," on grounds of "confidential informa-tion privilege and/or government informa-tion privilege." ECF No. 20–1 at 32.

### B. Deposition Questions

At his deposition, defendant Garcia was asked questions about what the CI told him, and he declined to answer, citing the governmental privilege and the confiden-tiality of the informant. See ECF No. 20–1 at 9–11. Defendant Osborn was asked questions about what the CI told him that led him to believe that the entire proper-ty—including 5846 E Carpenter Rd.—was encompassed by 5858 E Carpenter Rd., and he declined to answer, asserting the same privileges. See ECF No. 20–1 at 38, 45.

## III. THE MOTION TO COMPEL

### A. Meet and Confer

The parties met and conferred in person and by telephone.

### B. The Motion

#### 1. Plaintiff's argument

Plaintiff's theory of the case is that de-fendants are liable under the Fourth

---

**3.** The actual Request is not reproduced in the Joint Statement. The citation is to Manteca's response, which incorporates the Request.

Amendment for the search and seizure at her home because: (1) the search warrant was over-broad in that it included a search of her home ("two modular homes"), which had nothing to do with defendants' marijuana investigation (ECF No. 20 at 32–34); (2) the search warrant failed the "particularity" requirement because it did not specify that her home was to be searched ("5858 E Carpenter" only) (id.); and (3) the search warrant resulted from judicial deception, since defendants included her house in the search warrant without telling the judge that her house had nothing to do with the investigation (id. at 34–35). Plaintiff argues that she needs to know what the CI told the police, and what is in Exhibit C, because that is the only way to prove her theories.

 Regarding over-breadth, if defendants knew that there were two residences on the property, they were obligated to exclude plaintiff's property from the warrant if they had no probable cause for a search of her home. See Maryland v. Garrison, 480 U.S. 79, 85, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987) ("[p]lainly, if the officers had known, or even if they should have known, that there were two separate dwelling units on the third floor of 2036 Park Avenue, they would have been obligated to exclude respondent's apartment from the scope of the requested warrant," because there was no probable cause to search the respondent's apartment). That is because the warrant "must be no broader than the probable cause on which it is based." United States v. Weber, 923 F.2d 1338, 1342 (9th Cir. 1990).

Plaintiff argues that discovery is needed on this theory because:

> Defendants Garcia and Osborn arbitrarily designated a large parcel of land the object of their search in an aerial picture they found on Google, representing to the Magistrate that the entire parcel was "5858 Carpenter Rd.," when, in fact,

Plaintiff's separate residence at 5846 Carpenter Rd. was included in the boundary lines Defendants drew. Yet, there was no probable cause to search Plaintiff's residence.

ECF No. 20 at 33.

 Regarding particularity, plaintiff has a "Fourth Amendment right to a warrant describing with sufficient particularity the location to be searched ...." Navarro v. Barthel, 952 F.2d 331, 332 (9th Cir. 1991) (per curiam), cert. denied, 504 U.S. 966, 112 S.Ct. 2324, 119 L.Ed.2d 243 (1992). Further, "the right to be free from a search of the wrong place, even when executed pursuant to a warrant, is secured by the Fourth Amendment." Id. at 333. Put another way, "[t]he Warrant Clause categorically protects against unreasonable searches of places inadequately described." Id.

 Regarding judicial deception, omission of material facts from a search warrant affidavit can form the basis for a Fourth Amendment claim. Bravo v. City of Santa Maria, 665 F.3d 1076 (9th Cir. 2011) (reversing summary judgment against Section 1983 plaintiff where police omitted material fact from search warrant affidavit).

### 2. Defendant's argument

#### a. Unsealing the affidavit

 Defendants' objection to producing their copy of Exhibit C to the Search Warrant Affidavit is premised upon their assertion that they cannot produce it or reveal its contents, without violating the state court order that sealed Exhibit C. Further, they argue that this court lacks jurisdiction to order the state court to unseal the Garcia affidavit, citing Casler v. Bressler, 221 Fed.Appx. 553, 554 (9th Cir. 2007) (memorandum), United States v. Olson, 2015 WL 4509429, 2015 U.S. Dist. LEXIS 97136 (D. Nev. 2015), and United

States v. Henson, 123 F.3d 1226, 1238 (9th Cir. 1997).

 The premise is incorrect. The state court's sealing order does not even purport to have anything to do with documents that are not judicial records physically filed in court, nor with the information contained in those documents, even if they are filed in court. Rather, as is the case with sealing records in federal court, the sealing procedure allows the parties to file a document *with the court* without concern that the public's First Amendment right to view judicial documents will enable that physical document to be viewed by the public. See Nixon v. Warner Communications, Inc., 435 U.S. 589, 597, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978) ("[i]t is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents"); United States v. Index Newspapers LLC, 766 F.3d 1072, 1084 (9th Cir. 2014) ("[p]ursuant to the First Amendment, there is a presumed public right of access to court proceedings"). Indeed, California law independently deems documents that are filed with California courts to be judicial records that are open to public inspection. Bauguess v. Paine, 22 Cal.3d 626, 637, 150 Cal.Rptr. 461, 586 P.2d 942 (1978) ("[a]s a part of the judicial record, exhibits may be inspected by the public as well, absent some specific lawful order to the contrary"). This includes "[t]he documents and records of the court relating to the [search] warrant . . . ." Cal. Penal Code § 1534 ("if the warrant has been executed, the documents and records shall be open to the public as a judicial record").

Defendants rely upon Casler v. Bressler, 221 Fed.Appx. 553, 554 (9th Cir. 2007) (memorandum) for their argument that the affidavit, in whoever's hands, cannot be produced without an order from the state court unsealing it. There are several problems with defendants' reliance on Casler. First, Casler is an unpublished memorandum decision, which may not be cited *as precedent* in this Circuit. 9th Cir. R. 36–3(a) ("[u]npublished dispositions and orders of this Court" may be cited, under Fed. R. App. P. 32.1(a), but generally, they "are not precedent").[4]Second, even if this court could rely upon Casler, that case did not hold that the district court lacks the authority to obtain the affidavit sealed by the state court. Instead, the court stated only that plaintiff "has failed to direct the court towards any authority that suggests . . . that the district court possesses such a power." Id. Third, in Casler, plaintiff was attempting to get the affidavit directly from the state court's file, not a document in defendants' possession. See Casler v. Bressler, 1:2–cv–5763 AWI DLB, ECF No. 54 (E.D. Cal. March 21, 2005). The district court held that it did not have the power to order the state court to unseal the affidavit.

Here, plaintiff wants *defendants* to turn over a document in *their* possession. Therefore there is no need for this court to order anything to be unsealed, nor to presume any authority over any state court.[5]

4. The exceptions to the "no precedent" rule do not apply here.

5. In Olson, the United States sought production of a document held by the Nevada Attorney General, that had been ordered sealed by a Nevada state court. 2015 WL 4509429 at *1, 2015 U.S. Dist. LEXIS 97136 at *1. The district court held that the magistrate judge did not err in holding that the federal court has no authority to order the state AG to produce the documents despite the sealing order. The magistrate judge had ruled that "the principles of federalism, comity, and abstention do not allow a federal court to review a state court decision." 2015 WL 4509429 at *1, 2015 U.S. Dist. LEXIS 97136. Assuming Nevada's law is functionally identical to California's in this area, the undersigned respectfully disagrees that ordering a defendant to produce a copy of a document in his possession

### b. Confidential informant privilege

Defendants argue that the confidential informant privilege prevents them from producing Exhibit C, disclosing the contents of Exhibit C, and disclosing what the CI told them. They argue that they may not disclose *any* information relating to the CI without disclosing his identity. ECF No. 20 at 46–50.

█ There is such a privilege, although it is more commonly known as the "informer's privilege."

What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law. The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.

Roviaro v. United States, 353 U.S. 53, 59, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957) (citations omitted); United States v. Spires, 3 F.3d 1234, 1238 (9th Cir. 1993) ("[t]he government has a limited privilege to withhold an informant's identity").

█ There are two limitations on this privilege that apply here: (1) "where the disclosure of the contents of a communication will not tend to reveal the identity of an informer, the contents are not privileged," id. at 60, 77 S.Ct. 623; (2) "[w]here

the disclosure of an informer's identity, or of the contents of his communication, ... is essential to a fair determination of a cause, the privilege must give way," id. at 60–61, 77 S.Ct. 623. However, Roviaro also states:

Most of the federal cases involving this limitation on the scope of the informer's privilege have arisen where the legality of a search without a warrant is in issue and the communications of an informer are claimed to establish probable cause. In these cases the Government has been required to disclose the identity of the informant unless there was sufficient evidence apart from his confidential communication.

Id. at 61, 77 S.Ct. 623 (1957). Although there is a search warrant in this case, the question is still whether the information from the CI provided probable cause to support it.

### c. Analysis

The issue is one of balance.

We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense.

Roviaro, 353 U.S. at 62, 77 S.Ct. 623. Here, both sides have made strong cases.

Garcia's declaration (some of which is redacted from the public docket) states that disclosure of the CI's identity would impede ongoing police efforts, since the search at issue here "is part of an open investigation." ECF No. 20 at 47. Also, the

---

requires a review of state court action, if the original is among the court's sealed records. In Henson, a criminal case, defendant tried to introduce into evidence the confidential informant's probation report, that had been sealed by the state court. 123 F.3d at 1237. The district court ordered the report excluded until defendant had first "attempted to have the

report unsealed in the appropriate California court." Id. The Ninth Circuit did not hold that defendant must first seek unsealing in state court, rather it held only that the district court did not abuse its discretion in ruling "that the state court remedies must be exhausted first." Id. at 1238.

CI is an "active" CI, and disclosure would "prevent the CI's use in any future criminal investigation." Id. The CI would be at physical risk, as would be his family, if his identity were disclosed. Id. at 48–49. Also, the CI has proven to be reliable, according to Garcia. Without reviewing Exhibit C, however, the court has no way to assess Garcia's assertions.

On the other hand, the *entirety* of defendants' showing of probable cause to search plaintiff's home, if there is any, is contained in Exhibit C. None of that probable cause appears in the materials defendants have filed with the court, including Garcia's declaration, and even including the redacted portion of it. Meanwhile, the entirety of plaintiff's case is that there was no probable cause to search her home or seize and detain her:

> Plaintiff needs information concerning the alleged inform ant ... to question the alleged informant [and] to be able to evaluate, respond to, and test the Defendants' apparent contention that the informant's words provided probable cause to obtain a warrant that the[y] claim covered Plaintiff's separate residence and, thus, justified them forcibly entering her home, extracting her, detaining her, and searching her home.

ECF No. 20 at 21. Accordingly, plaintiff's ability to obtain a "fair determination" of her case depends upon (1) the contents of Exhibit C, because that is what the state judge based the Search Warrant on, and (2) what the informant told defendants, and what defendants told the state judge, because that goes to the reasonableness and legality of defendants' conduct in seeking the warrant.

■ Certainly, this court has the authority to compel production of Exhibit C, and the information provided by the CI, despite the informer's privilege, if disclosure is warranted on balance. Roviaro, 353 U.S. at 62, 77 S.Ct. 623 (calling for "bal-

ancing" the needs of law enforcement and the needs of litigation); see Mitchell v. City of Pittsburg, 2012 WL 92565 at *2, 2012 U.S. Dist. LEXIS 3954 (N.D. Cal. 2012) (ordering defendants to "disclose the identity of the witness [a confidential informant] subject to a protective order," after conducting the "balancing" analysis).

■ The undersigned concludes that the best way to balance the competing interests here is to compel a redacted production of Exhibit C, and answers to the challenged deposition questions about information provided by the CI, but subject to a tightly drawn protective order. The redactions will cover directly identifying information about the CI, plaintiffs' counsel having stated at the hearing that, for now, plaintiff will not press for the identity of the CI. There has been no showing that plaintiffs' counsel cannot comply with the terms of a protective order enjoining him from sharing with anyone any information gleaned pursuant to that order. However, plaintiffs' counsel disclosed at the hearing on this matter that plaintiff is the mother of Mr. Ford, whose person and home (at 5858 E Carpenter Rd.) was the main focus of the search. Accordingly, an "Attorneys' Eyes Only" protective order will be used.

## IV. CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED that plaintiff's Motion To Compel (ECF No. 13), is GRANTED, but limited as follows:

1. The parties shall submit a stipulated Attorneys' Eyes Only Protective Order—or separate proposed orders if they cannot agree—no later than 30 days from the date of this order, to cover the confidential production of Exhibit C, and deposition questions involving the CI. The stipulation shall also refer to and incorporate the manner in which documents may

be filed with the court if they contain information gleaned from Exhibit C, or about the CI. See Local Rules 141 (sealing documents), 141.1 (confidential information).

2. The parties shall submit a stipulation and proposed order modifying the discovery deadlines to accommodate discovery permitted by this order.

3. Upon this court's signing of the Attorneys' Eyes Only Protective Order, defendants, pursuant to that order and within 30 days:

a. Shall produce a redacted version of Exhibit C to plaintiff. Defendants may redact *only* the CI's name, and directly identifying information, such as address, social security number, physical description, and the like. Defendants may *not* redact any other matter, even if they believe it may point to the CI, such as information that only the CI would know.

b. Shall produce Garcia and Osborn to answer deposition questions regarding the CI, other than questions eliciting directly identifying information, notwithstanding any invocation of the informer's privilege.